IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN LEBOON, | : | CIVIL ACTION |
| *Plaintiff*, | : | |
| v. | : | |
| | : | |
| DS WATERS OF AMERICA, INC. | : | |
| and COLLECTION BUREAU | : | |
| OF AMERICA, LTD. | : | |
| *Defendants*. | : | NO. 20-5268 |

**Memorandum**

**Kenney, J.**                                                                                                                           **February 16, 2021**

Pro se Plaintiff Steven LeBoon ("LeBoon") alleges Defendant DS Waters of America, Inc. ("DS Waters")[1] failed to arbitrate a disputed unpaid balance and instead submitted the unpaid balance for collection to Defendant Collections Bureau of America ("CBOA") (collectively "Defendants"). He alleges Defendants reported the debt to the consumer reporting agencies without ensuring its accuracy, reasonably investigating or reinvestigating the disputed debt.

LeBoon alleges Defendants breached a contract under Georgia and Pennsylvania law by failing to arbitrate his dispute (Counts I, II, and III). He also asserts a Pennsylvania claim for the tort of "outrage," which we will refer to as an intentional infliction of emotional distress claim (Count IV). Defendants move to dismiss all of Plaintiff's claims. Having considered Defendants' motion, LeBoon's response in opposition, and Defendants' reply, we will deny Defendants' motion to dismiss as moot, but will *sua sponte* dismiss LeBoon's complaint without prejudice for lack of subject-matter jurisdiction.

**I.        BACKGROUND[2]**

---

[1] In 2015, DS Waters of America, Inc. changed its business name to DS Services of America, Inc.

[2] We "accept as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and construe[] them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). We draw the following facts from the Complaint and the attached exhibits. *See*

In April 2017, Plaintiff Steven LeBoon reviewed a copy of his Equifax credit report and found that it contained a trade line with a collections account reported by CBOA, acting on behalf of DS Waters. Compl., ECF No. 1, ¶¶ 7–8. Believing the $896 collections amount was inaccurate, LeBoon sent a certified letter to CBOA informing it of its "false" report and explaining that DS Waters was obligated to pursue any billing disputes through arbitration under the terms of its contract. *Id.* ¶ 8; Ex. B at 15–16.

The DS Waters contract ("Service Agreement") appended to the Complaint lists "Steve LeBoon" as the customer for a one-year recurring five-gallon water and dispenser rental. ECF No. 1, Ex. A. at 12.[3] The Service Agreement contains an "Important Terms and Conditions. Read Before Signing" section above the signature block. ECF No. 8-4, Ex. 1 at 2. The "Important Terms and Conditions" section provides:

> You acknowledge that you are the Customer or person authorized by the Customer to accept the terms and conditions of this Agreement. You authorize DS Waters of America, Inc. ("DSW") to obtain your consumer credit report to determine your credit worthiness, and you understand and acknowledge DSW may report information about your DSW account to credit bureaus and similar institutions. You acknowledge that you received a copy of this Agreement, and you agree to the terms and conditions above and on the reverse side.

*Id.* A "Cassandra LeBoon" signed the Service Agreement. *Id.* The terms and conditions of the reverse side contains a "Dispute Resolution" section which provides that the customer or person authorized by the customer:

> [w]ill first attempt to resolve any dispute with DSW arising out of this Agreement using good faith efforts to negotiate a resolution. Any dispute that remains unresolved for forty-five (45) days shall be resolved either in Small Claims Court or through binding arbitration before a neutral arbitrator in accordance with the

---

*Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complaint's claims are based upon these documents.").

[3] We will rely on the more legible copy of the Service Agreement Defendants attached as an exhibit to their Motion to Dismiss. *See* ECF No. 8-4, Ex. 1 at 2.

>Commercial Dispute Resolution Procedures and Supplementary Procedures for Consumer-Related Disputes of the American Arbitration Association.

*Id.* at 3. The Service Agreement contains a "Default" provision permitting DS Waters to cancel the agreement and demand immediate payment when the customer fails to make a payment or cure the default. *Id.* Under the Default provision, the customer agrees to pay all costs, including attorneys' fees and collection costs, that DS Waters incurs in connection with the customer's default. *Id*. Finally, the Service Agreement contains a governing law clause, providing that Georgia law governs the Service Agreement. *Id.*

On July 13, 2017 LeBoon called Defendants asking them to correct the "inaccuracies" on his credit report. Compl. ¶ 10. He received a letter from Equifax dated August 5, 2017 notifying him that Equifax would place a fraud alert on the trade line, but that the $896 collections amount would remain on the report. *Id.* ¶ 11. LeBoon ultimately paid the collections amount to obtain a mortgage, which he alleges cost $30,000 more in fees than he would have paid without the trade line on his credit reports. *Id.* ¶¶ 12–13.

In May 2018, LeBoon filed a suit against Equifax alleging it violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., by including the collections account on his credit report and asserting a Pennsylvania state law claim for the tort of "outrage," more commonly referred to as intentional infliction of emotional distress. *See LeBoon v. Equifax Info. Servs., LLC*, No. 18-cv-1978. Judge Pratter dismissed LeBoon's claims except for his Section 1681(g) claim alleging that Equifax failed to provide him access to his credit report upon request. *See LeBoon v. Equifax Info. Servs., LLC*, 2019 WL 3230995, at *6 (E.D. Pa. July 17, 2019); *see also* 2020 WL 610450, at *1 (E.D. Pa. Feb. 7, 2020) (denying LeBoon's motion for leave to file a second amended complaint). On June 23, 2020, Equifax and LeBoon stipulated to dismiss all claims in full with prejudice. *See* ECF No. 43.

LeBoon filed the instant suit on October 8, 2020 alleging that Defendants violated the Federal Arbitration Act and asserting a breach of contract claim under Pennsylvania law and under Georgia law. LeBoon makes two arguments: first, he is not a signatory to the Service Agreement and so it does not bind him; and second, if the Service Agreement does bind him, Defendants breached the contract. LeBoon also asserts a claim for intentional infliction of emotional distress.

LeBoon's allegations challenge Defendants' process in pursuing the disputed debt. He alleges Defendants reported his disputed debt without first establishing it through arbitration or small claims court as required under the Service Agreement. Defendants' alleged failure to arbitrate breached the Service Agreement regardless of whether LeBoon owed the disputed debt or how Defendants went about collecting the disputed debt. Because of Defendants failure to follow the contractual processes, LeBoon alleges he is entitled to the resulting damages from Defendants' premature reporting of a debt that he considered still under dispute and therefore not ripe for reporting under the terms of the Service Agreement.

Defendants now move to dismiss LeBoon's complaint under Fed. R. Civ. P. 12(b)(6), arguing that LeBoon's complaint fails to state any claim for relief.

## II. DISCUSSION

As a court of limited jurisdiction, we must satisfy ourselves of our subject matter jurisdiction and may raise the issue *sua sponte*. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016). A plaintiff bringing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015).

LeBoon alleges we have jurisdiction under 28 U.S.C § 1331, which provides jurisdiction for "civil actions arising under" federal law. *See* Compl. ¶ 1. "Federal question" jurisdiction arises in two ways. Commonly, "a case arises under federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013). However, even if a cause of action is based on state law, there is a "special and small category of cases in which arising under jurisdiction still lies." *Id*. (internal quotation marks omitted).

In the second "special and small category of cases," federal jurisdiction over a state law claim will lie if the complaint raises a federal issue that satisfies the jurisdictional test the Supreme Court set forth in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 ( 2005). Under *Grable*, the federal issue must be: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258 (summarizing the *Grable* jurisdictional test). For both categories of federal question jurisdiction, the plaintiff must satisfy the "well-pleaded complaint rule," which requires the grounds for jurisdiction be clear on the face of the pleading that initiates the case. *See Goldman v. Citigroup Glob. Markets Inc.*, 834 F.3d 242, 249 (3d Cir. 2016).

LeBoon asserts a claim under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16. Though LeBoon asserts Count I under the FAA, his allegations relate to the process Defendants used to manage the disputed debt, which did not accord with the Service Agreement's requirement that disputed debts be arbitrated or pursued in small claims court. His allegations and the damages he seeks relate to Defendants' alleged violation of the Service Agreement's required processes and thus sound in contract. To the extent LeBoon argues that Defendants were required to arbitrate his claims even if he was not a party to the contract, the FAA does not create a freestanding non-

5

contractual duty to arbitrate. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration."). Even if LeBoon had brought an action to compel arbitration under the FAA, the FAA does not create any independent federal-question jurisdiction and therefore does not provide a federal cause of action to ground subject-matter jurisdiction for LeBoon's complaint. *See Goldman*, 834 F.3d at 249 (3d Cir. 2016) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983).

We must look to LeBoon's allegations to see whether they somehow raise another basis for jurisdiction. Defendant's motion to dismiss argued that LeBoon's complaint construed liberally alleged violations of Sections 1681(i) and 1681s-b(2) of the Fair Credit Reporting Act, and Section 1692e(8) of the Fair Debt Collections Practices Act. *See* ECF No. 8-1 at 10–11. However, LeBoon's brief in opposition made clear that he did not intend to raise a claim under the Fair Credit Reporting Act or the Fair Dept Collections Practices Act. *See* ECF No. 9 at 2. Defendants' reply brief acknowledged LeBoon's position and dropped the argument. *See* ECF No. 10 at 4 n.1 ("Defendants will refrain from addressing any potential claim pursuant to the FCRA or the FDCPA as Plaintiff's opposition makes it abundantly clear that he did not intend to raise claims pursuant to these statutes."). Accordingly, we consider neither statute as a basis for federal question jurisdiction. *See Gunn*, 568 U.S. at 257.

LeBoon's FAA claim (Count I) and his Pennsylvania and Georgia breach of contract claims (Counts II and III) are based on his allegations that DS Waters breached the Service Agreement by "plac[ing] to third party to carry out their dirty work to Collection Bureau of America." *See* ECF No. 1, Compl. at p. 6–7. He further alleges that Defendants failed to investigate the collection

6

amount he disputed; failed to review the supporting information he provided to Defendants to contest the collection amount; failed to report the inaccurate nature of information Defendants provided to the credit reporting agencies; and failed to participate, investigate and comply with the credit reporting agencies reinvestigations of the contested collection amount. *Id.*

LeBoon's intentional infliction of emotional distress claim (Count IV) is premised on the emotional distress he experienced arising out of Defendants' conduct in handling the disputed debt. *Id.* ¶¶ 22–24. His intentional infliction of emotional distress claim is based on the same conduct underlying his breach of contract claims, i.e. that Defendants repeatedly misstated the amount due when reporting the DS Waters trade line and failed to reasonably investigate it following his complaints. *See* Compl. ¶¶ 23–24. He alleges "every bone in [his] body [was exacerbated] with stress" and he suffered from "PTSD." *Id.* ¶ 23. *See also Leboon v. Equifax Info. Servs., LLC*, No. CV 18-1978, 2019 WL 3230995, at *7 (E.D. Pa. July 17, 2019) (Pratter, J.) (exact same).

For federal jurisdiction over his state law claims to lie, LeBoon's complaint must satisfy the Supreme Court's jurisdictional test set forth in *Grable*. LeBoon's claims do not "necessarily raise a…federal issue," nor do they raise a "substantial" federal issue. *Grable*, 545 U.S. at 314. LeBoon's allegations do not raise *any* federal issue. Thus, LeBoon's claims do not fall within the "special and small category of cases" where federal jurisdiction over a state law claim will lie under *Grable*. *See Goldman,* 834 F.3d at 257.

Having found that LeBoon's claims do not plead any basis for federal question jurisdiction, we consider whether he pleads a basis for diversity jurisdiction. Federal district courts are vested with original jurisdiction over civil actions between citizens of different states, "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs…" 28 U.S.C.

7

§ 1332(a). "A corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c).

On its face, LeBoon's complaint also fails to provide the grounds for diversity jurisdiction because the amount in controversy does not exceed $75,000. *See GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 35 (3d Cir. 2018). Complete diversity of citizenship exists because LeBoon alleges that he is a Pennsylvania resident, that DS Waters' principal place of business is in Atlanta, Georgia, and that CBOA has its principal place of in Hayward, California. *See* ECF No. 1, Compl. ¶¶ 4–6. DS Waters and CBOA are respectively incorporated in Delaware and California. *See* DS Services of America, Inc., Registration Statement (Form S-4) (Mar. 31, 2014); Collection Bureau of America, Cal. Sec. of State, Entity Detail (C0371586).

However, the amount in controversy does not exceed $75,000. *See Spectacor Mgmt. Grp. v. Brown*, 131 F.3d 120, 122 (3d Cir.1997) ("As a general rule, [the amount in controversy] is determined from the good faith allegations appearing on the face of the complaint."). The sum plaintiff claims controls if the claim appears to be made in good faith. *See Auto–Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 395 (3d Cir. 2016). We are to dismiss a complaint for failure to allege the requisite amount only if it appears "to a legal certainty that the claim is really for less than the jurisdictional amount." *Id* (quotation omitted).

In *Angus v. Shiley Inc.*, our Court of Appeals emphasized that legal certainty must not be "measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated." 989 F.2d 142, 146 (3d Cir. 1993). LeBoon did not specify the amount of damages sought, and he alleges only that he was forced to take out a mortgage that was $30,000 higher in costs and fees because of Defendants' alleged conduct. *See* Compl. ¶ 12. At most, LeBoon alleges damages of $896—the disputed debt—and $30,000 in consequential damages,

despite the Service Agreement's disclaimer of DS Waters' liability for "any monetary damages in connection with the Agreement." ECF No. 1, Ex. A, at 13.

LeBoon cannot recover punitive damages for his breach of contract claims under Pennsylvania law. *See Samuel–Bassett v. KIA Motors America, Inc.*, 357 F.3d 392, 402 (3d Cir.2004). LeBoon's intentional infliction of emotional distress claim, which includes a request for punitive damages, is based on a garden-variety dispute over an unpaid account and contains no allegation that the account was indeed paid at the time it was reported. Punitive damages are proper only where the defendant's actions are so outrageous as to demonstrate willful, wanton, or reckless conduct. *See SHV Coal, Inc. v. Continental Grain Co.*, 587 A.2d 702, 704 (1991). We have no other facts to draw on to determine that LeBoon satisfies the amount in controversy requirement. Thus, LeBoon's complaint fails to allege that the amount in controversy exceeds $75,000 and we will dismiss his complaint without prejudice for lack of subject-matter jurisdiction.

### III.     CONCLUSION

For the foregoing reasons, we will deny as moot Defendants' motion to dismiss, but will *sua sponte* dismiss LeBoon's complaint without prejudice for lack of subject-matter jurisdiction. LeBoon has not asserted a federal question and has failed to meet his burden to show an amount in controversy exceeding $75,000. An appropriate order follows.