IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN LEBOON, | : | CIVIL ACTION |
| *Plaintiff*, | : | |
| v. | : | |
| | : | |
| DS WATERS OF AMERICA, INC. | : | |
| and COLLECTION BUREAU | : | |
| OF AMERICA, LTD. | : | |
| *Defendants*. | : | NO. 20-5268 |

**Memorandum**

**Kenney, J.**                                                                                   **March 30, 2021**

  We previously denied as moot Defendants DS Waters of America, Inc ("DS Waters")[1] and Collections Bureau of America ("CBOA") (collectively "Defendants") motion to dismiss Plaintiff Steven LeBoon's ("LeBoon") initial complaint. We sua sponte dismissed LeBoon's complaint without prejudice for lack of subject-matter jurisdiction and gave him leave to amend. Defendants now move to dismiss the amended complaint, which asserts the same four claims but newly alleges that LeBoon's damages exceed the statutory amount in controversy requirement. For the following reasons, we will dismiss LeBoon's amended complaint with prejudice.

**I. BACKGROUND[2]**

  In April 2017, LeBoon discovered that his Equifax credit report contained a trade line with a collections account from DS Waters that CBOA reported to the consumer reporting agencies on DS Waters' behalf. Am. Compl. ¶¶ 7–8. LeBoon sent a certified letter to CBOA informing it of its "false" report and explaining that DS Waters was obligated to pursue any billing disputes through arbitration under the terms of its contract. *Id*. ¶ 8; ECF No. 13, Ex. B at 21. LeBoon alleges that

---

[1] In 2015, DS Waters of America, Inc. changed its business name to DS Services of America, Inc.

[2] We discussed the facts at greater length in our February 17, 2021 Memorandum (ECF No. 11), and only briefly summarize them again here.

Defendants reported the debt to the consumer reporting agencies without ensuring its accuracy, reasonably investigating or reinvestigating the disputed debt.

The DS Waters contract ("Service Agreement") appended to the amended complaint lists "Steve LeBoon" as the customer for a one-year recurring five-gallon water and dispenser rental. ECF No. 13, Ex. A. at 18.[3] The Service Agreement contains an "Important Terms and Conditions. Read Before Signing" section above the signature block. ECF No. 15-2, Ex. 1 at 2. The "Important Terms and Conditions" section provides:

> You acknowledge that you are the Customer or person authorized by the Customer to accept the terms and conditions of this Agreement. You authorize DS Waters of America, Inc. ("DSW") to obtain your consumer credit report to determine your credit worthiness, and you understand and acknowledge DSW may report information about your DSW account to credit bureaus and similar institutions. You acknowledge that you received a copy of this Agreement, and you agree to the terms and conditions above and on the reverse side.

*Id.* A "Cassandra LeBoon" signed the Service Agreement. *Id.* The terms and conditions of the reverse side contains a "Dispute Resolution" section which provides that the customer or person authorized by the customer:

> [w]ill first attempt to resolve any dispute with DSW arising out of this Agreement using good faith efforts to negotiate a resolution. Any dispute that remains unresolved for forty-five (45) days shall be resolved either in Small Claims Court or through binding arbitration before a neutral arbitrator in accordance with the Commercial Dispute Resolution Procedures and Supplementary Procedures for Consumer-Related Disputes of the American Arbitration Association.

*Id.* at 3. The Service Agreement contains a "Default" provision permitting DS Waters to cancel the agreement and demand immediate payment when the customer fails to make a payment or cure the default. *Id.* Under the Default provision, the customer agrees to pay all costs, including attorneys' fees and collection costs, that DS Waters incurs in connection with the customer's

---

[3] We will rely on the more legible copy of the Service Agreement Defendants attached as an exhibit to their Motion to Dismiss. *See* ECF No. 15-2, Ex. 1 at 2.

2

default. *Id*. Finally, the Service Agreement contains a governing law clause, providing that Georgia law governs the Service Agreement. *Id.*

In his complaint, LeBoon asserted a claim (Count I) under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16. He also asserted breach of contract claims under Georgia and Pennsylvania law (Counts II, and III), and a Pennsylvania claim for the tort of "outrage," more commonly referred to as an intentional infliction of emotional distress ("IIED") claim (Count IV). He asserted that we had jurisdiction under 28 U.S.C § 1331, which provides jurisdiction for "civil actions arising under" federal law. *See* Compl. ¶ 1, ECF No. 1. We explained that none of his claims pleaded any basis for federal question jurisdiction and analyzed whether he pleaded a basis for diversity jurisdiction. *LeBoon v. DS Waters of Am., Inc.*, No. CV 20-5268, 2021 WL 617002 (E.D. Pa. Feb. 17, 2021). We determined that on its face, LeBoon's complaint failed to provide the grounds for diversity jurisdiction because the amount in controversy did not exceed $75,000. *Id.* at *5. Lacking subject matter jurisdiction, we dismissed LeBoon's complaint without prejudice.

On March 5, 2021, LeBoon filed an amended complaint asserting the same four claims and asserting jurisdiction under 28 U.S.C. § 1332. *See* Am. Compl., ECF No. 13. He now seeks $1 million in punitive damages for each count. Am. Compl. ¶¶ 13, 26, 27, 28, 31. LeBoon also newly alleges that he has paid an additional $75,845.89 in mortgage interest and principal that he would not have incurred but for Defendants' reporting of his disputed debt. *Id.* ¶ 13. Defendants move to dismiss LeBoon's first amended complaint with prejudice under Fed. R. Civ. P. 12(b)(6), arguing that LeBoon's complaint fails to state any claim for relief.

## II.  LEGAL STANDARD

We are to "liberally construe[]" LeBoon's pro se filing. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Given the "understandable

difference in legal sophistication," we hold pro se litigants like LeBoon to a "less exacting standard" than trained counsel. *Lopez v. Brown*, No. 04-6267, 2005 WL 2972843, at *2 (D.N.J. Nov. 4, 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010)) (internal quotation marks omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) we "must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;' " (2) we "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;' " and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675).

We must also accept as true all reasonable inferences emanating from the allegations, and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010). However, we "need not accept as true unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal quotation marks omitted), and "the tenet that a court must accept as true all

of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

In ruling on Defendants' motion to dismiss, we may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Guidotti v. Legal Helpers Debt Resolution*, L.L.C., 716 F.3d 764, 772 (3d Cir. 2013)).

### III.    DISCUSSION

Defendants moved to dismiss LeBoon's complaint under Fed. R. Civ. P. 12(b)(6), arguing that LeBoon's amended complaint fails to state any claim for relief. First, Defendants argue LeBoon's FAA claim and his breach of contract claims fail to state a claim for relief because he fails to allege the existence of a valid, enforceable agreement with either defendant. Second, Defendants argue LeBoon's complaint fails to state a claim for intentional infliction of emotional distress because the conduct alleged falls short of the level of atrocity required under Pennsylvania law. Third, Defendants argue that LeBoon's state law claims are preempted by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. And, finally, Defendants argue that LeBoon's Count I asserting a claim under the FAA is redundant to his breach of contract claims and fails because the FAA does not provide an independent cause of action.

We first discuss the FCRA preemption of LeBoon's state law claims. We then discuss LeBoon's FAA claim, and the merits of LeBoon's state law claims in the order he asserts them, analyzing first his breach of contract claims and then his IIED claims.

**A.  LeBoon's Count II, III, and IV are preempted by the FCRA.**

LeBoon's breach of contract (Counts II and III) and IIED (Count IV) claims are premised on allegations of conduct regulated under Section 1681s–2 of the FCRA and are therefore preempted by Section 1681t(b)(1)(F). The FCRA establishes a framework under which the consumer reporting agency is the central focus of any private litigation. *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 359 (3d Cir. 2011).[4] The FCRA carefully cabins the circumstances under which furnishers of information may be liable to a private litigant. *See id* (explaining that only when a furnisher fails to undertake a reasonable investigation following notice from a reporting agency may it become liable to a private litigant under § 1681s–2(b)). The statute contains a preemption provision providing that "[n]o requirement or prohibition may be imposed under the laws of any State…with respect to any subject matter regulated under…section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F). In turn, Section 1681s–2 regulates how furnishers of credit information must respond when they are given notice of a dispute over consumer credit records. *See* 15 U.S.C. § 1681s–2(b).

Our Court of Appeals has not yet addressed whether Section 1681t(b)(1)(F) preempts all state statutory and common law claims against furnishers of information with respect to the subject matter regulated under Section 1681s–2. *See Havassy v. Mercedes-Benz Fin. Servs. USA, LLC*, 432 F. Supp. 3d 543, 547 (E.D. Pa. 2020). However, several other Courts of Appeals have addressed the issue, finding that Section 1681t(b)(1)(F) preempts all state statutory and common

---

[4] LeBoon brought FCRA claims against Equifax, which the Honorable Gene E.K. Pratter dismissed because his allegations centered on the validity of the underlying debt. *See Leboon v. Equifax Info. Servs., LLC*, No. CV 18-1978, 2019 WL 3230995, at *5 (E.D. Pa. July 17, 2019) ("This is not a factual inaccuracy that could have been uncovered by a reasonable reinvestigation, but rather a legal issue that a credit agency ... is neither qualified nor obligated to resolve under the FCRA."). In this action, LeBoon has made clear that he never intended to raise any FCRA claims against Defendants. *See* Pl. Br. in Opp., ECF No. 9 at 2.

law claims. *See Purcell v. Bank of Am.*, 659 F.3d 622, 625–26 (7th Cir. 2011) (finding defamation claim preempted by § 1681t(b)(1)(F)); *Macpherson v. JPMorgan Chase Bank, N.A.,* 665 F.3d 45, 47–48 (2d Cir. 2011) (same)*; Marshall v. Swift River Academy, LLC*, 327 F. App'x 13, 15 (9th Cir. 2009) (same)*; Pinson v. Equifax Credit Info. Servs., Inc*., 316 F. App'x 744, 751 (10th Cir. 2009) (finding state libel and false light invasion of privacy claims were preempted by § 1681t(b)(1)(F)).

Likewise, our sister courts have found that Section 1681t(b)(1)(F) preempts state statutory and common law claims against furnishers of information acting under Section 1681s–2. *See Cicala v. Trans Union, LLC*, Nos. 15-6790, 15-6801, 2016 WL 2622377, at *4 (E.D. Pa. May 9, 2016); *Vullings v. Trans Union, LLC*, 115 F. Supp. 3d 538, 543 (E.D. Pa. 2015); *Grossman v. Trans Union, LLC*, 992 F. Supp. 2d 495, 500 (E.D. Pa. 2014); *Goins v. MetLife Home Loans*, No. 12-6639, 2014 WL 5431154, at *6–7 (E.D. Pa. Oct. 24, 2014).

LeBoon's breach of contract claims are premised on allegations of conduct regulated under Section 1681s–2 and are therefore preempted. In his breach of contract claims (Counts II and III), he alleges that Defendants failed to investigate the collection amount he disputed; failed to review the supporting information he provided to Defendants to contest the collection amount; failed to report the inaccurate nature of information Defendants provided to the credit reporting agencies; and failed to participate, investigate and comply with the credit reporting agencies reinvestigations of the contested collection amount. *See* Am. Compl.¶¶ 27–28. LeBoon's intentional infliction of emotional distress claim is based on the same conduct underlying his breach of contract claims, i.e. that Defendants repeatedly misstated the amount due when reporting the DS Waters trade line and failed to reasonably investigate it following his complaints. *See id.* ¶¶ 30–31. Such claims are "with respect to" the responsibilities of the Defendants who furnish information to consumer

7

reporting agencies and are therefore are preempted by the FCRA. *See Galper v. JP Morgan Chase Bank*, *N.A.*, 802 F.3d 437, 441 (2d Cir. 2015).

### B. We will dismiss LeBoon's FAA Claim.

The FAA authorizes district courts' involvement in the arbitration process in two ways. *Teamsters Loc. 177 v. United Parcel Serv.*, 966 F.3d 245, 251 (3d Cir. 2020) (quotation omitted). The first is "when a party resists arbitration under an existing arbitration clause." *Id*. (citing U.S.C. §§ 3, 4). Second, "when enforcement of an arbitration award is sought[,] ... the statute authorizes the district court to confirm, vacate, or modify the award under a narrow scope of judicial review." *Id*. (citing 9 U.S.C. §§ 9–11). The FAA does not create a freestanding cause of action for litigants seeking damages in recompense for another's failure to arbitrate a dispute. *See* 9 U.S.C. §§ 1–16.

LeBoon has made no significant changes or additions to Count I in his amended complaint. As we explained in our earlier opinion, LeBoon's Count I, which purports to assert a claim under the FAA, challenges the process Defendants used to manage the disputed debt. LeBoon continues to allege that Defendants violated the FAA by failing to arbitrate his disputed debt before reporting it as he argues they were required to do under the Service Agreement. These allegations are duplicative of his breach of contract claims and seek damages for Defendant's failure to arbitrate his disputed debt. They do not state a cognizable claim under the FAA. Accordingly, we will dismiss LeBoon's Count I with prejudice.

### C. LeBoon's state law claims do not state plausible claims for relief.

Even if LeBoon's claims were not preempted under the FCRA, we would still dismiss his breach of contract and IIED claims because they fail to state plausible claims for relief.

> i. **LeBoon's breach of contract claims fail to state a plausible claim for relief.**

LeBoon asserts a breach of contract claim under Pennsylvania law and under Georgia law. LeBoon makes two arguments: first, he is not a signatory to the Service Agreement and so it does not bind him; and second, if the Service Agreement does bind him, Defendants breached the contract. Defendants argue we should dismiss LeBoon's breach of contract claims because he fails to allege the existence of a valid, enforceable agreement with either defendant.

Before analyzing the merits of the breach of contract claims, we must determine which state's laws apply to LeBoon's breach of contract claims. The Service Agreement contains a choice of law provision specifying that Georgia law governs the contract. *See* ECF No. 15-2, Ex. 1 at 2. Defendants cite Pennsylvania law but note that "[t]o the extent the Court applies the Agreement's choice of law provision…there is no conflict between Pennsylvania and Georgia law on this point." *See* ECF No. 15-1 at 14 n.6.

With regard to the choice of law provision, federal courts sitting in diversity look to the law of the forum state in making a choice of law determination. *Robeson Industries Corp. v. Hartford Acc. & Indem. Co.*, 178 F.3d 160, 165 (3d Cir.1999). As we sit in the Eastern District of Pennsylvania, Pennsylvania choice of law rules apply. When applying Pennsylvania choice of law rules, courts honor contractual choice of law provisions if that state bears a reasonable relationship to the contract. *Kruzits v. Okuma Machine Tool, Inc., et al.*, 40 F.3d 52, 55 (3d Cir.1994). Pennsylvania courts will only ignore a choice of law provision if it violates the state's public policy. *See id.* at 56; *Schifano v. Schifano*, 471 A.2d 839, 843 n. 5 (Pa. Super. Ct. 1984) (citing with approval the Restatement (Second) Conflict of Laws § 187 (1969), which provides "the law of the state chosen by the parties will apply, unless either: (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy

9

of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which [ ]would be the state of the applicable law in the absence of an effective choice of law by the parties").

Here, the elements of a breach of contract claim are the same under Pennsylvania and Georgia law. *Compare Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) ("[T]hree elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages.") *with Budget Rent–A–Car, etc. v. Webb*, 469 S.E.2d 712 (Ga. 1996) ("The elements of a right to recover for a breach of contract are the breach and the resultant damages to the party who has the right to complain about the contract being broken."). It appears that Georgia law was chosen in the Service Agreement because DS Waters' principal place of business is in Atlanta, Georgia. *See* Am. Compl. ¶ 5. We will honor the parties' contractual choice of law provision and apply Georgia law to LeBoon's breach of contract claims because we have no reason to believe that doing so would violate Pennsylvania's public policy. *See Kruzits*, 40 F.3d at 56.

We now turn to the merits of LeBoon's breach of contract claims, considering first whether a contract exists between the parties. A valid contract requires "parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." *McKean v. GGNSC Atlanta, LLC*, 765 S.E.2d 681, 683–84 (2014). A non-signatory may be "bound by any valid and enforceable provisions of the contract" as a third-party beneficiary. *Lankford v. Orkin Exterminating Co.*, 597 S.E.2d 470, 473 (Ga. 2004) (quotations omitted). Third-party beneficiaries need not be specifically named in a contract, so long as the contract shows that it was intended for the third-party's benefit. *Id.*

LeBoon maintains that he "never entered into [a] binding agreement" with DS Waters and that no enforceable contract existed between LeBoon and Defendants. Am. Compl. ¶ 20. Elsewhere in his amended complaint, LeBoon alleges that "by forcing Plaintiff to pay the debt [Defendants] confirmed that have a binding contract (even though Plaintiff did not signed [sic] the executable agreement with DS Waters of America, Inc)." *Id.* at 12.

Despite his protestations that "the contract [ ] was not authorized in any way by Plaintiff, nor did he signed [sic] any contract or authorized [sic] any third party on his behalf to signed [sic] a contract for any products," Am. Compl. ¶ 22, we find that LeBoon is bound by the Service Agreement. *See Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018) (explaining that where plaintiff's "own exhibits contradict [his] allegations in the complaint, the exhibits control."). "Steve Leboon" is named on the contract as the customer. *See* ECF No. 15-2, Ex. 1 at 2. Cassandra LeBoon, who Defendants assert is Plaintiff's wife, signed the Service Agreement on the signature line for the "customer or customer representative." *Id.*; ECF No. 15-1 at 9. The Service Agreement cautions the signatory that "[y]ou acknowledge that you are the Customer or person authorized by the Customer to accept the terms and conditions of this Agreement." *See* ECF No. 15-2, Ex. 1 at 2. In a letter he appended to his complaint, LeBoon acknowledges that he received the Service Agreement in October 2011. *See* ECF No. 13, Ex. B at 21 (writing to DS Waters that the Service Agreement "was furnished to [him] on 10-4-11.") LeBoon at no point alleges that he—the customer on the contract—did not accept or receive the benefits of the Service Agreement.

By eventually paying for the services rendered under the Service Agreement, though he maintains he paid a "illegal collection amount," Am. Compl. ¶ 18, LeBoon ratified the Service Agreement, even if the Service Agreement's signature was irregular, which he does not allege. *See*

11

*Lankford*, 597 S.E.2d at 473 (finding plaintiffs ratified a service contract signed by live-in mother where plaintiffs accepted benefits and made payments under the contract). And, LeBoon again ratified the contract when he brought this suit claiming breach of the Service Agreement. "The relationship of principal and agent arises whenever one person expressly or by implication authorizes another to act for him or subsequently ratifies the acts of another in his behalf. The institution of a suit by a principal in his own name is a ratification of an agent's unauthorized act." *Beckworth v. Beckworth*, 336 S.E.2d 782 (Ga. 1985) (citing OCGA § 10–6–1). Thus, by filing this suit in his own name, LeBoon ratified his agent's—his wife—action, and a valid contract exists between him and DS Waters.

  We next consider whether he pleads the requisite elements of a breach of contract claim. As we found that LeBoon is bound by the Service Agreement, LeBoon has pleaded the first requisite element, the existence of a contract, as to defendant DS Waters. We agree with Defendants that Plaintiff has not alleged, nor can we reasonably infer from his allegations, that CBOA was a party to the contract or was in any way bound by the Service Agreement. Plaintiff's breach of contract claims against Defendant CBOA thus fail. *See* ECF No. 15-1 at 14.

  We next consider whether LeBoon has alleged that DS Waters breached the Service Agreement. LeBoon alleges DS Waters breached the Service Agreement by "plac[ing] to third party to carry out their dirty work to Collection Bureau of America." *See* Am. Compl. at 12. He further alleges that Defendants failed to investigate the collection amount he disputed; failed to review the supporting information he provided to Defendants to contest the collection amount; failed to report the inaccurate nature of information Defendants provided to the credit reporting agencies; and failed to participate, investigate and comply with the credit reporting agencies reinvestigations of the contested collection amount. *Id.*

LeBoon's allegations challenge Defendants' process in pursuing the disputed debt. By reporting his disputed debt without first establishing it through arbitration or in small claims court, he argues Defendants breached the Service Agreement. Because of Defendants' failure to follow the contractual processes, LeBoon alleges he is entitled to the resulting damages from Defendants' premature reporting of a debt that he considered still under dispute and therefore not ripe for reporting under the terms of the Service Agreement.

Accepting LeBoon's allegations as true, he has not plausibly alleged facts to satisfy the breach element of a contract claim Georgia law as to DS Waters. The Service Agreement's "default" provision permits DS Water to "demand immediate payment of the entire unpaid balance" and contemplates sending uncured defaults to a collection agency. *See* ECF No. 8-4, Ex. 1 at 3 (providing that the customer may be liable for "all costs, including attorneys' fees and collection costs incurred by us in connection with your default or the exercise of our remedies…"). LeBoon has not alleged that DS Waters acted in breach of the Service Agreement. As he is unable to plead facts to satisfy the necessary elements of his breach of contract claims, we will dismiss Count II and Count III with prejudice.

### ii. LeBoon's IIED claim fails to state a plausible claim for relief.

LeBoon asserts an IIED claim (Count IV) based on the emotional distress he experienced because of Defendants' conduct in handling the disputed debt. Am. Compl. ¶¶ 29–31. He alleges "every bone in [his] body [was exacerbated] with stress" and he suffered from "PTSD." *Id.* ¶ 30. *See also Leboon v. Equifax Info. Servs., LLC*, No. CV 18-1978, 2019 WL 3230995, at *7 (E.D. Pa. July 17, 2019) (Pratter, J.) (exact same). His IIED claim is based on the same conduct underlying his breach of contract claims, i.e. that Defendants repeatedly misstated the amount due

when reporting the DS Waters trade line and failed to reasonably investigate it following his complaints.

Under Pennsylvania law,[5] an action for IIED requires a plaintiff to show that (1) the conduct is extreme; (2) the conduct is intentional or reckless; (3) the conduct caused emotional distress; and (4) the distress is severe. *Kornegey v. City of Philadelphia*, 299 F. Supp. 3d 675, 683 (E.D. Pa. 2018). The plaintiff must demonstrate that the defendant's conduct was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society." *Kornea v. J.S.D Mgmt., Inc.*, 366 F. Supp. 3d 660, 671 (E.D. Pa. 2019) (citing *Kazatsky v. King David Memorial Park, Inc.*, 527 A.2d 988, 991 (Pa. 1987)). He must also "suffer some type of resulting physical harm due to the defendant's outrageous conduct." *Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010) (citation and quotation omitted).

Defendants argue LeBoon's complaint fails to state a claim for intentional infliction of emotional distress because the conduct alleged falls short of the level of atrocity required under Pennsylvania law. LeBoon's amended complaint makes allegations that are substantially similar to those made in his suit against Equifax alleging it violated the FCRA by including the collections account on his credit report. *See LeBoon v. Equifax Info. Servs., LLC*, No. 18-cv-1978, ECF No. 15.

---

[5] We construe LeBoon's IIED claim as one brought under Pennsylvania law. Contractual choice of law provisions do not govern tort claims between contracting parties unless the fair import of the provision embraces all aspects of the legal relationship, which we determine by considering the narrowness or breadth of the provision. *Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pennsylvania, Inc.*, 848 F. Supp. 569, 576 (E.D. Pa. 1994); *see also Aamco Transmissions, Inc. v. Marino*, 1992 WL 38120, at *6 n. 15 (E.D.Pa.1992) ("narrow choice of law provisions are generally held insufficient to encompass the contracting parties' tort claims"). A careful reading of the choice of law provision at issue here demonstrates its restricted scope. The provision is limited on its face to "this agreement." Thus, the Georgia choice of law provision does not govern LeBoon's tort claim.

LeBoon's amended complaint fails to state an IIED claim as a matter of law. "[O]nly the most egregious conduct" has been found to support this cause of action. *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa.1998). Our sister courts have routinely rejected IIED claims premised on the types of conduct in which LeBoon alleges Defendants engaged. *See*, *e.g.*, *Est. of Rennick v. Universal Credit Servs., LLC*, No. CV 18-3881, 2019 WL 196539, at *5 (E.D. Pa. Jan. 15, 2019) (finding that plaintiff's allegations that defendants reported false information generated by credit reporting agencies did not sufficiently allege an IIED claim). Here, as in LeBoon's suit against Equifax, he cannot state an IIED claim because his claims do not rise to the level of atrocity required to sustain an IIED claim under Pennsylvania law. Accordingly, we will dismiss LeBoon's IIED claim with prejudice.

    **D. We will deny leave to amend.**

We find further amendment of LeBoon's claims would be futile and therefore will dismiss Counts I, II, III, and IV with prejudice. *See Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (determining that dismissal without leave to amend is justified where amendment would be futile). LeBoon cannot amend his pleadings to cure the FCRA preemption of his state law claims or to state a cognizable claim under the FAA. Nor can he allege facts to satisfy the elements of a breach of contract claim under Georgia law as to either defendant or allege facts rising to the level of atrocity needed to sustain an IIED claim under Pennsylvania law. Accordingly, further amendment would be futile.

## IV. CONCLUSION

For the foregoing reasons, we will grant Defendants' motion to dismiss and dismiss Plaintiff's amended complaint in its entirety. An appropriate order follows.